In the Ma'ter of the Probate of the Will of Charles F. Hoffman, Deceased.

Rosalie A. Avery et al., Appellants; *v.* Margaret Hoffman et al., Respondents.

Will — intention of testator in disposition of his property to be ascertained from facts existing, and presumably in mind of testator, at time of execution of will — effect of failure of part of the disposition of residuary estate — provisions of will relating to residuary estate examined and held, that owing to the prior death of certain residuary legatees, testator died intestate as to the shares of such legatees.

That every contingency was not anticipated by the testator, in providing for the death of a beneficiary, is no reason for holding a trust invalid.

The intention of the testator in disposing of his residuary estate is to be ascertained not by what occurred long after the execution of his will, but by what was, apparently or presumably, in his contemplation at the time he was making it. A testator is presumed to speak as of the time of executing his will and to make his calculation on his dispositions taking effect.

The failure of a part of the disposition of a residuary estate will not augment the shares of the other residuary legatees. When there is such a failure there results a residue of a residue and the rule is well settled that it will not be added to the other shares, but will pass to the heirs or next of kin.

A testator bequeathed legacies in trust to his two nieces to receive the income thereof, and in case of the death of either without issue before the death of an aunt, the testator's sister, her share was to revert to the latter, and in case of the death of either niece without issue, subsequently to the death of their said aunt and prior to the death of their grandmother, their share was to revert to their grandmother. He gave to his sister before named a legacy to be held in trust, to revert, in case of her death without issue, to the testator's mother. He appointed his mother residuary legatee, the amount to be placed in trust and the income thereof to be paid to her. At her death the principal and any accumulated income was to be divided *pro rata* between the legatees named, "respectively, upon the basis of their respective legacies herein, and to be subject to the same trust restrictions, stated herein, appertaining to their several legacies hereunder." By a codicil he gave legacies to another sister and to his brother, and further provided: "I hereby make these two legatees, upon the death of my mother, *pro*

*rata* residuary legatees under the terms and conditions as set forth" in the clause of the will making his mother residuary legatee "as additional residuary legatees." The mother and the brother and sister mentioned in the codicil predeceased the testator. *Held*, that the trusts are valid; that while a gift of the principal of the trust fund to the children of the beneficiaries is not expressed, it arises by implication, when the testator, though apparently making no provisions for the contingency of issue, as by a gift in words to such, nevertheless, only gives the remainder to others in the case of a beneficiary's death without issue, and *held*, further, that testator died intestate as to the shares of his residuary estate given to his sister and his brother by the codicil and that said shares are divisible among his heirs and next of kin according to the statute and not to the residuary legatees named in the will.

*Matter of Hoffman*, 140 App. Div. 121, modified.

(Argued February 17, 1911; decided March 21, 1911.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered October 7, 1910, which affirmed a decree of the Kings County Surrogate's Court admitting to probate the will of Charles F. Hoffman, deceased, and construing certain provisions thereof.

The facts, so far as material, are stated in the opinion.

*D-Cady Herrick* and *Charles W. Dayton, Jr.*, for Rosalie A. Avery et al., appellants. The deceased died intestate. (*Herzog* v. *T. G. & T. Co.*, 177 N. Y. 86; *Leach* v. *Godwin*, 198 N. Y. 35; *Close* v. *F. L. & T. Co.*, 195 N. Y. 92; *Matter of Title G. & T. Co.*, 195 N. Y. 339; *Robinson* v. *Martin*, 200 N. Y. 159.) The portion of the residuary or principal estate bequeathed to Wilhelmina Bourdette and John F. Hoffman should go to the testator's next of kin. (*Gallagher* v. *Crooks*, 132 N. Y. 338; *Matter of Trumble*, 199 N. Y. 454; *Pomeroy* v. *Hincks*, 180 N. Y. 73; *Downing* v. *Marshal*, 23 N. Y. 366; *Moffett* v. *Elmendorf*, 152 N. Y. 484; *Matter of Russell*, 168 N. Y. 173; *Herzog* v. *Title G. & T. Co.*, 177 N. Y. 97; *Kerr* v. *Dougherty*, 79 N. Y. 327; *Morton* v. *Woodbury*, 153 N. Y. 243; *Matter of Kimberly*, 150 N. Y. 93.)

*J. Brownson Ker* for Grace Hoffman et al., infants, appellants. The testator died intestate as to the shares of his residuary estate given in the codicil to John F. Hoffman and Wilhelmina Bourdette because of the occurrence of their deaths prior to that of the testator. (*Lynch* v. *Pendergast*, 67 Barb. 500 ; *Hard* v. *Ashley*, 117 N. Y. 606 ; *Westcott* v. *Cady*, 5 Johns. Ch. 334 ; *Herzog* v. *T. G. & T. Co.*, 177 N. Y. 86 ; *Morris* v. *Sickley*, 133 N. Y. 409 ; *Matter of T. G. & T. Co.*, 195 N. Y. 339 ; *McLean* v. *Freeman*, 70 N. Y. 87 ; *Van Kleeck* v. *Dutch Church*, 20 Wend. 471 ; *Colt* v. *Colt*, 32 Conn. 418 ; *Wetmore* v. *Parker*, 4 Abb. [N. C.] 317.) John F. Hoffman's share in the residue should be measured by the amount of his $10,000 legacy, plus the value of the Caroline plantation given to him in article 3 of the will. (*Wetmore* v. *Parker*, 52 N. Y. 450 ; *Colt* v. *Colt*, 32 Conn. 422 ; *Van Kleeck* v. *Dutch Church*, 20 Wend. 457 ; *Weeks* v. *Cornwell*, 104 N. Y. 325 ; *Morris* v. *Sickley*, 133 N. Y. 459 ; *Rogers* v. *Rogers*, 153 N. Y. 347.)

*Edwin T. Rice* for Margaret Hoffman et al., respondents. Article I of the will, which gives a legacy of $75,000 to the proponent Margaret Hoffman, and article II, which gives a like bequest of $50,000 to the testator's niece, Carolyn Hoffman, are entirely valid dispositions. (*Close* v. *F. L. & T. Co.*, 195 N. Y. 92 ; 1 Jarman on Wills [6th ed.], *325, 433, 436 ; *Wager* v. *Wager*, 96 N. Y. 164 ; *Taggart* v. *Murray*, 53 N. Y. 233 ; *Terry* v. *Wiggins*, 47 N. Y. 512 ; *Norris* v. *Beyea*, 13 N. Y. 273 ; *Tyson* v. *Blake*, 22 N. Y. 558 ; *Smith* v. *Van Ostrand*, 64 N. Y. 278 ; *Matteson* v. *Palser*, 173 N. Y. 404 ; *Close* v. *F. L. & T. Co.*, 195 N. Y. 92.) Article VI of the will contains an entirely valid disposition of the entire residuary estate. (*Close* v. *F. L. & T. Co.*, 195 N. Y. 92.) The testator did not intend or direct that the bulk of his estate should be held as a single trust fund. The entire estate was divided, and lawful trusts were created as well of the legacies as of the shares of the residuary estate based upon such legacies. (*Matter of Mount*, 185 N. Y. 162.) The

codicil contained no effective disposition of any portion of the residuary estate. (*Robinson* v. *Martin*, 200 N. Y. 159.)

*Benjamin A. Morton* for Union Trust Company of New York, respondent. The will and codicil show clearly that the testator's intention was to make a gift of the entire residue of his estate to the surviving residuary legatees "*pro rata*" "upon the basis" of their respective particular legacies. It is clear that he did not limit them to a fraction of the residue merely and that he did not leave undisposed of the portion of the residue of his estate which Wilhelmina Bourdette and John F. Hoffman would have enjoyed if they had survived the testator. (*Farnam* v. *Farnam*, 53 Conn. 261; *Matter of King*, 200 N. Y. 189; *Hoppock* v. *Tucker*, 59 N. Y. 202; *Martineau* v. *Simonson*, 59 App. Div. 100; *Matter of Kimberly*, 150 N. Y. 90; *Weeks* v. *Cornwell*, 104 N. Y. 325; *Matter of Logan*, 131 N. Y. 456; *Sholl* v. *Sholl*, 5 Barb. 312.) The residuary provision in the codicil did not cut down the general residuary clause in the will. (*Kerr* v. *Dougherty*, 79 N. Y. 327; *Wetmore* v. *Parker*, 52 N. Y. 450.) There is nothing to justify the inclusion of the value of the Caroline plantation in determining the share of John F. Hoffman. (*Matter of White*, 125 N. Y. 544.)

GRAY, J. The Appellate Division has affirmed a decree of the surrogate of Kings county, which admitted to probate the will of Charles Ferdinand Hoffman, deceased, and which construed certain of its provisions. It consisted of two instruments, a will and a codicil; both of which were wholly written by the testator and were executed a few years before his death. The testator died April 9th, 1909, unmarried and leaving no descendants. The will was executed in 1899. By its first and second articles the testator gave to his nieces Margaret and Carolyn, respectively, legacies of $75,000 and $50,000. He directed that the two legacies should be held in trust and that "the income shall be paid only to said legatees respectively and an amount of Ten Thousand dollars ($10,000)

of the principal may be paid to each of them if they so elect when they attain the age of 30 years, to purchase and furnish a home.  *  *  *  The remainder of their respective legacies shall remain in trust  *  *  *  and in case of the death of either of them without issue, before the death of their Aunt Inez Hoffman, legatee under Art. IV herein, then the share of such decedent shall in such event revert to her the said Inez Hoffman. And in case either said nieces should die without issue subsequently to the death of their Aunt the said Inez Hoffman and prior to the death of their grandmother Caroline Hoffman then in such case their respective shares shall in like manner revert to their grandmother Caroline Hoffman." Article III gave to his brother, John Frederick Hoffman, a plantation in Louisiana. By article IV the testator gave to his sister, Henrietta Louisa, known in the family as Inez Hoffman, a legacy of $125,000, to be held in trust "and the income thereof to be paid to herself only,  *  *  *  with this proviso however that she may if she wish draw not exceeding Ten Thousand dollars ($10,000) with which to purchase and furnish a home for herself.  *  *  *  In case of her death without issue and prior to that of her mother, all her interest herein shall revert to her mother." He, also, gave to her all his "interest in and to the estate" of his mother. By article VI the testator appoints his mother his "residuary legatee, the amount to be placed in trust as herein provided in Art. VIII, for her sole benefit, and the income thereof to be paid to her.  *  *  *  At her death, the principal and any accumulated income there may be shall be divided *pro rata* between the legatees named in Articles I, II, and IV herein respectively upon the basis of their respective legacies herein and to be subject to the same trust restrictions stated herein appertaining to their several legacies hereunder." By article VIII the testator appointed the Union Trust Company of the city of New York as the trustee for the trusts in his will and as the executor thereof. A year later, the testator executed the codicil. By that instrument he, first, revoked the legacies given in art. IV of the will to his sister Inez and substituted in place thereof the sum of

" $25,000, subject to all the conditions and terms as expressed in said Art. IV, with this exception to wit: that the sum of $2,500, * * * instead of ten thousand dollars, be allowed her out of said amount for purchase of a home for herself if she so elects." Next he bequeathed to his sister, Wilhelmina Bourdette, the sum of $35,000 and to his brother, John Frederick Hoffman, the sum of $10,000 and then provided as follows: "And I hereby make these two legatees, upon the death of my mother, *pro rata* residuary legatees under the terms and conditions as set forth in Art. VI herein, as additional residuary legatees. The above legacy to John F. Hoffman is in addition to the one in his favor under Art. III herein."

The contents of the will and codicil have been sufficiently referred to for the present purpose. When they became operative at the testator's death, his mother and the brother and sister mentioned in the codicil had been dead several years. He left an estate of upwards of two million dollars, and his next of kin consisted in two sisters and certain nieces and nephews. While this will is not always well expressed and indicates that the testator was not advised by counsel in framing its provisions, his intention is sufficiently apparent. It has been questioned and construed with respect to the validity of the trusts and with respect to the effect of the provisions of the codicil upon the division of the residuary estate. By the principal instrument, the intention of the testator was to make provision for his two nieces Margaret and Carolyn, for his sister Inez and for his mother. He placed his gifts to them in trust, as to each, and each trust terminated at the death of the particular beneficiary. The trustee was to hold each legacy and the residuary estate as separate trusts, subject as to testator's sister and nieces to the right to withdraw $10,000 for the purchase of a home. The principal of the trusts for his nieces, in case either died without issue, was to go to their Aunt Inez; or, if she should have died, to their grandmother. In case of the death without issue of his sister Inez, her mother was to receive the trust

fund. While a gift of the principal of the trust to children of a beneficiary is not expressed, it arises by implication. The testator, though apparently making no provision for the contingency of issue, as by a gift in words to such, nevertheless, only gives the remainder to others in the case of a beneficiary's death without issue. No remainderman could take except in that event. He will be deemed, therefore, to have intended the trust fund to go, primarily, to the children, if any there should be. They would take an estate by implication. (*Matter of Moore*, 152 N. Y. 602; *Close* v. *Farmers' L. & T. Co.*, 195 ib. 92.)

Some criticism is made, by way of argument, upon the use of the word "share" by the testator, when directing the disposition of the trust fund upon the death of a niece. It is suggested that that indicates a gift only of the beneficiary's share of the trust income and that the trust continues as to the principal; but that proposition is untenable. It is very clear that the trust funds were not to be held *in solido*, but in several trusts; they are so treated in the will and each terminated at the death of the beneficiary. The word "share," however inapt, had reference to the principal of the trust. It referred to the portion of his estate which the testator had set apart and, if susceptible of two meanings, that one will be given, which will support the testamentary provision. Nor is there any difficulty with respect to the trusts in the residuary estate created by article VI. Under the original will, at the death of the testator's mother, who was to have the use of the residuary estate for life, it was to be divided between the two nieces and the sister of the testator, *pro rata*, "upon the basis of their respective legacies and to be subject to the same trust restrictions appertaining to their special legacies." The effect of this disposition of the residuary estate by the testator was to create additional and separate trusts for each niece and for the sister in shares therein, which would be defined by ascertaining the proportion which the amount of each legacy bore to the aggregate of the three legacies. For instance, under the will, before it was affected by the codicil, the residuary

estate would be divided into fractional parts, represented in Margaret's case by 75-250ths, or three-tenths, in Carolyn's case by 50-250ths, or one-fifth, and in Inez's case by 125-250ths, or one-half. New trusts were created in these shares; each of which terminated upon the death of the beneficiary. I think that the trusts created by the will were valid and that they effected no illegal suspension of the power of alienation, either as to the gifts of the legacies, or as to the disposition of the residuary estate. That every contingency was not anticipated by the testator, in providing for the death of a beneficiary, is no reason for holding the trust invalid. It was sufficient for the surrogate, in passing upon the objections made to the will, to determine whether trusts had been created, which were valid under our statutes. What might become of the remainder upon the death of a beneficiary, in a contingency not foreseen by the testator, was a question, which was not required to be decided in advance by the surrogate. If it should ever arise, it will be then time enough to determine it. (*Matter of Mount*, 185 N. Y. 162.)

Enough has been said concerning the original will and its trust provisions and the more serious question, upon this appeal, arises with relation to the provisions of the codicil. The codicil reduced the legacy of the testator's sister Inez from $125,000 to $25,000 and the legacy, as reduced, was subjected to the same "conditions and terms" as expressed with reference to the legacy given in the will, except as to the option of withdrawing an amount for the purchase of a home, which was also reduced to $2,500. The codicil then gave legacies to the testator's sister Wilhelmina and to his brother John of $35,000 and $10,000, respectively, and made "these two legatees, upon the death of his mother, *pro rata* residuary legatees under the terms and conditions, as set forth in Art. VI," the residuary clause of the will. As these two legatees predeceased the testator, the question is what became of the shares in the residuary estate so given to them? Did he die intestate as to those shares; or did they go to augment the shares of the other residuary legatees, who survived him?

The latter conclusion was reached by the court below, and, in my opinion, it was erroneous. I think that we should hold the testator to have died intestate as to the shares in his residuary estate, which his brother John and his sister Wilhelmina would have taken, had they survived him. The pecuniary legacies to them lapsed, by reason of their deaths prior to the testator's; but there could be no lapse of their shares in the residuary estate. The failure of a part of the disposition of a residuary estate will not augment the shares of the other residuary legatees. When there is such a failure, there results a residue of a residue and the rule is well settled that it will not be added to the other shares; but will pass to the heirs, or next of kin. (*Beekman* v. *Bonsor*, 23 N. Y. 298, 314; *Kerr* v. *Dougherty*, 79 ib. 327, 346; *Booth* v. *Baptist Church of Christ*, 126 ib. 215, 245; *Morton* v. *Woodbury*, 153 ib. 243, 256.) The general rule that, in a will of personal estate, a general residuary clause carries whatever is not otherwise effectually and legally disposed of, is not applicable where the residue of a residue is in question. In considering the effect of the codicil, we do not look to what happened, when it became operative; we seek for what the testator intended by it when arranging the disposition of his residuary estate. Will and codicil are to be read together, as one instrument, and, so read, we observe that the gift of the testator's residuary estate was not to a class; for it was to certain persons named, in shares which were not equal, but which were definite and not dependent for their amounts upon the number who should survive. (See *Matter of Kimberly*, 150 N. Y. 90.) Each legatee was to have a definite fractional share of the residuary estate. The intention of the testator in disposing of his residuary estate is to be ascertained not by what occurred long after the execution of his will, but by what was, apparently, or presumably, in his contemplation, at the time he was making it. A testator is presumed to speak as of the time of executing his will and to base his calculations upon his dispositions taking effect. (*McLean* v. *Freeman*, 70 N. Y. 81; *Morris* v. *Sickly*, 133 ib. 456.) The difficulty here arises in the

testator's having neglected to make provision in anticipation of the failure of his sister Wilhelmina and of his brother John to survive him, or to change his will after their deaths. This is not a case where the presumption against intestacy is available; it is simply the case of a contingency not provided for and whose happening has left portions of the residuary estate undisposed of. The testator had given his residuary estate to five persons in the following proportions, namely: to Margaret 75-195ths, to Carolyn 50-195ths, to Inez 25-195ths, to Wilhelmina 35-195ths and to John 10-195ths. When his will became operative, upon his death, the shares remained the same; but, by the deaths of Wilhelmina and John, 45-195ths were undisposed of and were distributable among his next of kin. It is suggested that the use by the testator, in the codicil, of the word "legatees," in constituting his brother and sister *pro rata* residuary legatees, was technical and should, therefore, be limited to such persons as were, in fact, legatees; in which view, as the legacies to the brother and sister had lapsed by their deaths, they should not be considered in the division of the residuary estate. I think it plain that the use of the word "legatees" was descriptive, and, in its situation in the clause, served, only, to describe the sister and brother just mentioned. It was used by the testator colloquially and with reference to the two persons then in his mind. Although the brother's legacy in the codicil was given in addition to the devise in the original will of the plantation, I do not think that his share of the residuary estate should be increased by the appraised value of the latter. I incline to the view that the pro-rating of his and the sister's shares with the other legacies could never have been intended except upon the basis of the two pecuniary legacies just bequeathed to them. The use of the words "*pro rata*" was with obvious reference to them.

I reach the conclusion that in so far as the decree of the surrogate admitted the will to probate and upheld the validity of the trusts created, it adjudged correctly; but in so far as

it adjudged that the residuary estate was divisible among the testator's two nieces and his sister, Inez, as surviving legatees, it was erroneous. I advise, therefore, that the decree of the surrogate and the order of the Appellate Division affirming the same be modified, so as that it shall be adjudged, as the construction of this will, that the testator died intestate as to the shares of his residuary estate given to his sister Wilhelmina and to his brother John and that the said shares, representing 45-195ths thereof, are divisible among his heirs and next of kin, according to the statute in such cases, and, as so modified, that the said order and decree be affirmed, with costs in this court to all parties appearing by counsel; to be paid out of the estate.

CULLEN, Ch. J., VANN, WERNER, HISCOCK and COLLIN, JJ., concur; HAIGHT, J., absent.

Ordered accordingly.