In the Matter of the Petition of the TITLE GUARANTY AND TRUST COMPANY, as Trustee for GEORGE FRANCIS OPDYKE and Another, Praying for the Construction of Certain Provisions of the Last Will and Testament of IDA R. OPDYKE, Deceased, under Section 40 of the Surrogate's Court Act. (Proceeding No. 1.)

In the Matter of the Petition of WILBUR F. OPDYKE, Praying for the Construction of Certain Provisions of the Last Will and Testament of IDA R. OPDYKE, Deceased, under Section 40 of the Surrogate's Court Act. (Proceeding No. 2.)

In the Matter of the Intermediate Accounting of WILSON C. PRICE, as Executor, etc., of IDA R. OPDYKE, Deceased. (Proceeding No. 3.)

SOUTHERN BAPTIST CONVENTION, Appellant, Respondent; WILBUR F. OPDYKE, Respondent, Appellant; TITLE GUARANTY AND TRUST COMPANY and Others, Respondents.*

Fourth Department, July 1, 1930.

* Mod., 255 N. Y. 255.

*J. Russell Rogerson,* for Southern Baptist Convention.

*Ernest Cawcroft* [*H. Stanley Turnquist* of counsel], for Wilbur F. Opdyke, George Francis Opdyke and the Title Guaranty and Trust Company, as trustee.

*Marion H. Fisher,* special guardian for Frank Wilbur Opdyke, an infant, respondent.

SEARS, P. J. Ida R. Opdyke, the testatrix, died in the city of Jamestown on the 12th day of May, 1927. Her son, Wilbur F. Opdyke, was her sole heir and next of kin. She left a will which the executor named in it offered for probate. Probate of the instrument was contested by her son. After a jury trial, in which the verdict on all points was against the contestant, an agreement was entered into between Wilbur F. Opdyke, the contestant, and the Southern Baptist Convention, a religious corporation incorporated under the laws of Georgia, the Title Guaranty and Trust Company, as trustee, the principal legatees in the will, and the special guardian for infant beneficiaries of the trust, and the executor, by the terms of which, in consideration of the payment to Wilbur F. Opdyke of $22,670 by the executor (to which payment the legatees and beneficiaries named consented), Wilbur F. Opdyke withdrew his objections to the probate and consented thereto, and further stipulated " that all of the legatees mentioned in said will

are duly qualified to receive the legacies provided therein, and that the contestant shall not question the validity of such gifts whether absolute or in trust." There were other provisions of this agreement not material here. This settlement was approved by an order of the surrogate. The will was thereupon admitted to probate. Shortly thereafter in a proceeding taken under section 231-a of the Surrogate's Court Act to determine the compensation of the attorneys rendered in the contest, the following fees were allowed by an order of the surrogate made November 29, 1927: To the executor, for his services as attorney, $15,000; to another attorney for the executor, $15,000; to the attorney for the Southern Baptist Convention, legatee, $15,000, and to the attorney for the Title Guaranty and Trust Company, as trustee, legatee (not the counsel upon this appeal), $15,000. The order made these fees payable out of the estate. The special guardian for the two infant beneficiaries of the trusts provided for in the will (who was not the special guardian in this proceeding) was allowed $12,000, payable out of the infants' estate. No appeal was taken from the order making these unusually large allowances. The principal legatees were all represented by attorneys upon the contest, and all the attorneys as above stated received substantial allowances.

The will of Ida R. Opdyke disposed of her estate as follows (disregarding certain small specific bequests): $300 was given to the Lakeview Cemetery Association of Jamestown, in trust, to use the income for the decoration and ornamentation of her cemetery lot. By paragraph " Eighth," "All the rest, residue and remainder of [her] my property of every sort and description " was directed to " be divided into two equal parts," and out of one of the one-halves of her estate she bequeathed $5,000 to the First Baptist Church of Jamestown, in trust, to use the income for its corporate purposes. Then follows paragraph " Ninth:" " The balance of this one-half of my estate I give, devise and bequeath to the Southern Baptist Convention, to be used for the purpose of providing education for the mountain people under jurisdiction of said Convention." Paragraph " Tenth " begins: " Out of the other one-half of my estate, I give, devise and bequeath the sum of $20,000 to the Title Guaranty and Trust Company of New York City, in trust, nevertheless, * * *." Then follows a full description of the trust, in substance, to hold and invest the principal and receive and pay the income to the testatrix's son Wilbur F. Opdyke during his lifetime, with remainder to his son, George Francis Opdyke. By paragraph " Eleventh " a second trust of the same amount carved out of the second one-half of her estate was given to the same trustee with income payable to Wilbur F. Opdyke for life and remainder to

his son, Frank Wilbur Opdyke. After the paragraphs making provision for these two trusts occurs paragraph " Twelfth," which begins as follows: "All the rest, residue and remainder of my property, and constituting the balance of the said one-half of my estate, I give, devise and bequeath to the Title Guaranty and Trust Company of New York City, in trust, nevertheless, upon the following terms and conditions: * * *." The beneficiaries of this last and final trust are her two grandsons, George Francis and Frank Wilbur Opdyke, and the details of this, as well as of the two previously mentioned trusts are immaterial here. The will contained a further clause giving the executor five years to settle the estate so that the most advantageous results might be obtained in the sale of property and securities, and directing that the executor should not be called upon to account during that period, although authorized to settle the estate earlier in his discretion. The value of the estate on the date of the decedent's death is determined by the learned surrogate's decree to have been $407,046.63. In the intermediate account filed by the executor, it appears that certain small items aggregating $104.94 have been discovered since the original appraisal and are not included in the value just mentioned. These should be added. The value of the estate at the death of the testatrix was $407,151.59. Owing largely to the increase in value of one block of stock held by the testatrix at her death, the executor has been able to realize a gain in the value of the corpus of the estate amounting to $166,300.95. Income has also been received since the death of the testatrix amounting to over $24,000. Thus there is a total increase in the gross value of the estate over the worth at the time of testatrix's death of over $190,000.

Section 17 of the Decedent Estate Law, as it existed at the time of decedent's death, read as follows: " No person having a husband, wife, child or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association, corporation or purpose, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of one-half, and no more." (As amd. by Laws of 1923, chap. 301.) The Southern Baptist Convention contends that its legacy does not offend such provision; that the religious corporations were given by the will less than one-half of the estate, and, consequently, that the will was in all respects valid, and that the religious corporations were entitled to the proportionate share in the increase after testatrix's death. It relies largely upon the opinion in *Hollis* v. *Drew Theological Seminary* (95 N. Y. 166), where Judge

EARL said: "To ascertain whether a testator has given more than one-half of his estate, his whole estate must be treated as converted into money at his death, and if the money value of the portion given is not more than one-half, then the statute has not been violated." It urges that to transform a bequest to a religious corporation of a residue, or a portion of a residue extending beyond the limitation imposed by the statute into a general legacy for a fixed amount, and credit all gains and charge all losses to the balance of the estate would, in case of losses after a decedent's death, work an injustice and hardship to those entitled to take the balance of the estate. We are, however, concluded by authority and agree with the learned surrogate that the Southern Baptist Convention is entitled to no part of the increase, but that the legacies which religious corporations may receive are limited to one-half of the value of the estate determined as of the date of testatrix's death, with interest thereon from the date of death. (*Matter of Seymour*, 239 N. Y. 259; *Matter of Sugden*, 249 id. 541; *Matter of Carnegie*, 203 App. Div. 91; affd., 236 N. Y. 517.) The interest is to be calculated from the date of death, and not from one year after death, as is usual in cases of legacies. The interest is given solely to insure to the beneficiary the full one-half of the estate as expressly provided by the statute. (*Matter of Seymour, supra.*)

The provisions of section 17 of the Decedent Estate Law may be invoked not only by the relatives named in the statute but by any person receiving benefit therefrom. (*Decker* v. *Vreeland*, 220 N. Y. 326; *Robb* v. *Washington & Jefferson College*, 185 id. 485.) Wilbur F. Opdyke by his stipulation as to the validity of the bequests in the will, and the power of the legatees to receive such bequests, did not, in our opinion, waive the right to invoke the application of the statutory rule. The bequest as made was, at least in one sense, fully valid. The testatrix gave one-half of her estate to religious corporations and this she had full power to do. The only question involved is as to the interpretation of this gift in view of the statutory limitation referred to. In another sense, perhaps, it may be said that the statutory clause created an invalidity as to increases. If there was ambiguity, it has been resolved favorably to the testatrix's son upon evidence taken before the surrogate.

The question remains as to the disposition to be made of the increase upon the half of the estate which is given to the religious corporations. Reading the will as a whole, it is clear that the fundamental purpose of the testatrix was to divide her estate into two equal parts, and to give one of these two equal parts to charity, and the other equal part to a trustee for the benefit of her immediate family. There was no general residuary clause. There was a

residuary clause as to each half. She contemplated no intestacy. She probably thought, as would be natural from the ordinary meaning of words, that if she left half to charity and half to her relatives, a balance would not be possible. She doubtless did not consider that " one-half " in the one case had a different meaning from " one-half " in the other. But, whether she considered this or not, she showed in her will no inclination to make her immediate kin the beneficiaries as to any surplus in the charity half. The language of the " Twelfth " paragraph quoted above, "All the rest, residue and remainder of my property," is immediately followed by the explanatory words, " and constituting the balance of the said one-half of my estate." She was in this part of the will making disposition of the family half of her estate. If she had intended that any increase not already disposed of should go into the trust, the will could easily have said, " and constituting the balance of the said one-half of my estate, *and* whatever else is not hereinbefore disposed of." It is self-evident that the will was drawn by an experienced draftsman, and the division was into two " equal " parts, not two " unequal " parts, distributive and not to a class. No intention is shown to dispose of any excess over half for the benefit of her relatives. The situation is not unlike that which occurs when a residuary estate is given to more than one person distributively and not as a class, and the legacy of one such distributive part of the residue lapses. Under such circumstances, by the familiar rule, the lapsed legacy does not fall into the shares of the legatees of other distributive parts of the residue, but an intestacy results as to such lapsed legacy as a " residue of a residue." (*Matter of Hoffman,* 201 N. Y. 247; *Beekman* v. *Bonsor,* 23 id. 298; *Wright* v. *Wright,* 225 id. 329.)

In our opinion, the increase upon the half of the estate bequeathed to charity passes, subject to the expenses of administration, to Wilbur F. Opdyke as sole heir and next of kin of the testatrix.

The bequest of $300 to the Lakeview Cemetery, in trust, is not a bequest to any of the corporations or purposes mentioned in section 17 of the Decedent Estate Law, and should not be included in computing the total amount of legacies to corporations or purposes mentioned in that section.

The appellant convention also urges that the surrogate exceeded his authority in determining to what funds and legacies the payment to Wilbur F. Opdyke's attorneys' fees mentioned above should be charged in the settlement of the estate. It bases this claim upon the orders which approved the settlement with Wilbur F. Opdyke, fixed the amounts allowed to the attorneys and directed the executor to make the payments to Wilbur F. Opdyke and the

attorneys " out of the estate." This contention, however, is not open to the convention appellant because of the stipulation to which it was a party, entered into on the 8th day of September, 1928, by which it agreed that among the questions to be determined by the surrogate in the present proceedings were these: " To what portion or share of the estate should the fees, fixed by the order of November 29, 1927, be charged? " and, " To what portion or share of the estate should the $22,670 paid under the stipulation to Wilbur F. Opdyke be charged? "

We agree with the learned surrogate that the Southern Baptist Convention must pay the fees of its attorneys, but we are of the opinion that the sum of $22,670 paid to Wilbur F. Opdyke for the settlement of the litigation should be divided between the convention and the trust funds, and paid by the convention and the trustee, respectively, in the ratio of the amount of principal received by the convention to the amount of principal, including increase of principal, received by the trustee.

The decree should be modified in accordance with this opinion, and as modified affirmed, with one bill of costs to each party appearing by separate attorneys and to the special guardian of the infants, payable out of the estate.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Decree modified on the law in accordance with the opinion and as modified affirmed, with a bill of costs to each party appearing upon this appeal by separate attorneys and filing brief and to the special guardian, payable out of the estate.