In the Matter of Proving the Last Will and Testament of WINFIELD A. FOREMAN, Deceased.

LOREN O. FOREMAN and Others, Executors, etc., of WINFIELD A. FOREMAN, Deceased, Appellants; MAURICE SIMMONS, Special Guardian, and Others, Respondents.

First Department, June 2, 1933.

*Jeremiah T. Mahoney* of counsel [*Stanley G. Falk* and *Edward C. Beck* with him on the brief; *Falk, Phillips, Twelvetrees & Falk*, attorneys], for the proponents, appellants.

*John V. Higgins* of counsel [*Thomas J. O'Neill*, attorney], for the contestant, respondent.

*Louis D. Frohlich* of counsel [*Daniel F. Cohalan* with him on the brief; *Nathan Burkan*, attorney] for the respondent Nathan Burkan.

*Maurice Simmons*, special guardian, respondent.

MERRELL, J. When the will of the decedent was offered for probate, objections to the probate of the will were interposed by Florence Jane Foreman, the widow of the decedent. The trial of said contest was then begun before one of the surrogates of New York county and a jury and after said trial had continued for three days a settlement was arranged, with the approval of the surrogate. Under such settlement it was agreed that the will should be admitted to probate, but that the contestant's share in the net estate of the decedent should be increased to twenty-six per cent thereof. Such settlement has not been formally completed, and no decree has been entered allowing the probate of said will, and the appellants herein have not, as ·yet, qualified as executors. Upon reaching the agreement of settlement, application was made by Thomas J. O'Neill, substituted attorney for the contestant, for an allowance for services which he had rendered in behalf of the contestant upon such probate proceeding. Attorney O'Neill based his application for an allowance under sections 278 and 231-a of the Surrogate's Court Act. The respondent Burkan, who represented the contestant from the filing of the objections until he was supplanted by the substitution of O'Neill as her attorney, obtained an order granting him a lien for his services upon any share of the estate which the contestant might recover, and, prior to the entry of the order appealed from, a proceeding was pending for the fixation of the amount of Attorney Burkan's lien. Such proceeding was entirely independent of the proceeding for allowances which had been instituted by the petition of Attorney O'Neill. Neither of the appellants was a party to the proceedings with respect to the lien asserted by Burkan. Burkan neither filed nor served any petition or other motion papers, but obtained an order to show cause on December 28, 1932, which· directed the appellants and the special guardian to show cause why an order should not be made awarding an allowance to said Nathan Burkan. The allowances asked by the attorneys for the contestant were opposed by the attorneys for the proponents.

The question presented upon this appeal is as to the legality of the orders appealed from allowing the attorneys for the contestant compensation for their services upon the contest, payable out of the general estate of the decedent. Section 278 of the Surrogate's Court Act provides as follows: " The surrogate, *upon rendering a decree, may,* in his discretion, fix such a sum as he deems reasonable, to be allowed as costs, to the petitioner, and to any other party who has succeeded in a contest, or whose attorney, in the absence of a contest, has rendered services in the proceeding of substantial benefit *to him,* or to the estate or fund, not exceeding, where there

has not been a contest, twenty-five dollars, or where there has been a contest, seventy dollars; and in addition thereto, where a trial or hearing upon the merits necessarily occupies more than one day, twenty-five dollars for each additional day, necessarily occupied in the trial or hearing and in preparing therefor,  *  *  *.

"When the decree is made upon a contested application for probate or a will, costs, payable out of the estate or otherwise, shall not be awarded to an unsuccessful contestant of the will, unless he is a special guardian for an infant or incompetent, appointed by the surrogate, or is named as an executor in a paper propounded by him in good faith as the last will of the decedent."

We find no support for the application of the attorneys for the contestant by the provisions of section 278 of the Surrogate's Court Act above quoted. The allowances therein permitted are to be made by the surrogate *upon rendering a decree*. In the case at bar, at the time the allowances were made, and as yet, no decree of the surrogate has been made admitting the will to probate. While the parties have agreed that the will may be admitted to probate, no decree has been entered to that effect and there is no authority whatever for the making of the allowances in question under section 278 of the Surrogate's Court Act. Prior to 1914 the same provisions contained in the present section 278 of the Surrogate's Court Act were contained in section 2558, subdivision 3, and section 2561 of the Code of Civil Procedure. Sections 2561 and 2562 were construed in *Matter of Kreidler* (68 Misc. 412). In his opinion in that case the surrogate wrote as follows: "There seems to be some confusion or misapprehension on the part of the bar in general on the subject of costs and allowances in the Surrogate's Court, and, in view of the fact that some of the parties to this proceeding have asked for allowances which the surrogate has no power to grant, we take this occasion to make a short review of the law governing costs and allowances in Surrogate's Court.  *  *  *

"It matters not how generous the surrogate might feel, how liberally he might wish to award costs or allowances to an accounting party, or costs to any other party, the above mentioned sections of the Code of Civil Procedure limit him, and he must keep within their provisions.

"Many counsel and attorneys seem to think that costs and allowances are made to them or belong to them. This is a mistake. Costs or allowances are awarded or granted to a party, and not to his counsel or attorney. *Seaman* v. *Whitehead*, 78 N. Y. 306; *Matter of Welling*, 51 App. Div. 357; Milliman Law of Costs, p. 264, § 185, and citations thereunder.

"This is on the principle that the party has employed an attor-

ney or counsel to whom he is personally responsible, and the party's liability to his attorney or counsel is not measured by the allowance of the surrogate. It may well be more than the allowance. The claim of the counsel or attorney is against the party employing him, and he is entitled from such party to a fair compensation for his services, and for all his expenses and disbursements, paid or incurred under his retainer; and, whether the party obtains any costs or allowance, it matters not to the attorney, as a matter of law. It is only a question of how much the party can be reimbursed out of the estate or fund, or, where there has been a contest, out of the opposing party.

" In a contest an attorney or counsel may have fairly earned $1,000, and can hold his client liable therefor, but his client, the party, cannot be reimbursed any more than the sections of the Code above cited provide."

We are in accord with the reasoning of the surrogate in the opinion above quoted, and therefrom it clearly appears that the amount of costs allowable by a surrogate is strictly limited under the provisions of section 278 of the Surrogate's Court Act, and that allowances may be made only in the cases provided in said section. (See, also, *Matter of O'Brien*, 146 Misc. 555, 558; *Matter of Reimers*, 261 N. Y. 337.)

The respondent Burkan relies on the provisions of section 231-a of the Surrogate's Court Act, claiming that the provisions of section 278 of the Surrogate's Court Act are overridden by section 231-a. The section last mentioned provides merely a method whereby, as between an attorney and his client, the value of the attorney's services may be fixed. Section 231-a received construction in *Matter of Chaves* (143 Misc. 872). In that case Surrogate FOLEY, of New York county, wrote what we regard as a very able opinion as to the applicability of section 231-a of the Surrogate's Court Act. Surrogate FOLEY, in his opinion, wrote as follows: " The provisions of section 231-a of the Surrogate's Court Act with respect to the authority of the surrogate to direct payment ' from the estate generally ' are intended primarily, and almost exclusively, to apply to payments for services rendered to the executor, administrator or trustee. It was not intended to permit the diminishment of the pecuniary shares of other persons interested, by large allowances out of the general estate to attorneys for legatees, remaindermen or other beneficiaries. In most cases these charges would fall unjustly upon the residuary legatees. In trust funds they would reduce the income of the life tenant or the share of the remainderman. Where disputes arise in accounting or other proceedings, the attorney for the party (who is not a representative of the estate) should be paid

directly by the client he represents. Under section 278 of the Surrogate's Court Act costs may be awarded, or where a construction of the will is required, reasonable allowances may be made by the surrogate. In these cases the charges allowed are customarily payable out of the general estate or the principal of the trust fund."

*Matter of Chaves* (*supra*) involved a contested accounting and the surrogate clearly laid down the rule that although an application be made under section 231-a of the Surrogate's Court Act by the attorney for a contestant for an allowance out of the general estate, the section confers no authority for making such allowance, but that the contestant's attorney must be paid out of the contestant's share in the estate. The courts have definitely established that by the provision contained in section 231-a for the payment of allowances out of the general estate, the allowances to be made were for services rendered to a representative of the estate, the only exception being that services rendered by an attorney for a particular party may be compensated out of the general estate when the general estate has been benefited by the services rendered. We are not impressed by the fanciful argument of counsel for the respondents that the contestant's withdrawal of her objections, and her consent to the entry of a decree admitting the will to probate, saves a long and expensive contest, thereby benefiting the estate of the decedent. We do not think the consent of the contestant to the admission of the will to probate is such an advantage to the estate as would justify the payment of her counsel from the general estate. In *Matter of Vorndran* (132 Misc. 611) Surrogate Schulz, of Bronx county, in construing section 231-a of the Surrogate's Court Act, in the course of his opinion said: " It seems] quite apparent that if many parties appeared in such a matter, which is not unusual, and the fees of the attorney for each were charged against the estate generally, it might seriously be depleted thereby. Assuming that it may be done, it should be a condition precedent that the services be shown to have resulted in such an advantage to the estate that it would be unfair for the party to pay for them, and the representative of the estate should not be required to proceed to a hearing as to the nature, extent and value of such services which, in itself, might involve considerable expense to the estate, until it is evident that they have brought about the result stated." The same rule has been applied by Surrogates' Courts and by the Appellate Divisions in the following cases: *Matter of Opdyke* (230 App. Div. 290, 295, 296); *Matter of Parsons* (121 Misc. 747, opinion by Foley, S.; affd., 208 App. Div. 769).

In our view there is no statute authorizing the granting of the allowances given to the contestant's attorneys in the orders

appealed from.   Aside from a lack of statutory authority for making the allowances to the attorneys for the contestant, we do not look with approval upon such claims upon the estates of decedents as were made in this case.   The claimants, with the exception of the special guardian, had legal claims against the contestant for the performance of legal services in her behalf.   The respondent Burkan, prior to the entry of the order granting him an allowance to be paid from the general estate, had obtained an order granting him a lien for his services upon any share of the estate which the contestant might recover, and, when the application for an allowance was made in his behalf, a proceeding was pending for fixing the amount of such lien.   The order granting the allowance to Attorney Burkan provided as follows: " Ordered that Nathan Burkan be, and he hereby is awarded an allowance of $2500.00 for his services herein, which sum shall be paid to him upon the entry of the decree herein, admitting the will to probate, and the qualification of the executors thereunder, and that said sum, when paid, shall be credited to Florence Jane Foreman and shall be deducted from the amount which shall be payable to Nathan Burkan, pursuant to the order fixing and determining his lien." The proceeding in which the allowances were made was instituted upon the petition of Thomas J. O'Neill on December 27, 1932. O'Neill was substituted for Attorney Burkan, as attorney for the contestant.   When he entered the contest it was upon a contingent contract of retainer.   The order of the surrogate granting an allowance to the substituted attorney for the contestant provided as follows: " Ordered that it appearing that said Thomas J. O'Neill has a contingent contract of retainer with the contestant in this proceeding; that in the event there shall be paid to him in cash the amount due him under his contingent contract of retainer, that he shall then allow to his client from the amount paid to him pursuant to his contract of retainer, the amount which is hereby awarded him as the aforesaid cash allowance."   It will thus be seen that the obligation to pay the attorneys for the contestant, to the amount of $7,500, was transferred from the contestant to the general estate. Undoubtedly the attorneys for the contestant rendered efficient services in her behalf in support of her contest, and it is entirely possible that the settlement of the contest favorable to her, whereby her share, upon the probate of the will, is to be increased to twenty-six per cent of the net estate of the decedent, may have been the result of the services rendered by her attorneys, and for which they should receive suitable compensation.   But such compensation should come from the recipient of such services whose share in the estate has been so materially augmented, and

should not be paid from the general estate. The surrogate had no authority to make allowances to attorneys payable out of the general estate of the decedent, except by authority of statute. We find no statutory authority for making these allowances.

Inasmuch as the will had not yet been received for probate nor the compromise approved by any order or decree of the surrogate when the allowance to the special guardian was made, the duties of the special guardian have not, as yet, been concluded. We think the allowance of $10,000 made to the special guardian was premature. Properly, a suitable allowance to the special guardian should be made when the will is admitted to probate, and upon notice to the other interested parties. At that time the special guardian should submit an affidavit stating the services rendered by him and any disbursements which he may have incurred. At that time the executors of the will or other interested parties would have an opportunity to consider the application of the special guardian for an allowance and to meet any claims made by him as to the value of the services rendered. The allowance to the special guardian was made by the surrogate without any opportunity to the executors to be heard. The application of the special guardian was that he should be allowed the sum of $25,000, together with disbursements, which he claims to have incurred, amounting to $157.50. His claim was shown by an affidavit produced at the time of the return on the order to show cause without previous service or notice to the appellants of the intention to make such application. We think the executors should have notice of an application by the special guardian for an allowance and an opportunity to be heard and to object to the allowance, in case they should deem the same excessive. Unquestionably, compensation to the special guardian is a proper charge upon the general fund of the estate, but the making of such allowance should await the entry of the decree admitting the will to probate, and should be made upon notice to the executors and an opportunity on their part to meet the same.

We are of the opinion, therefore, that the orders appealed from should be reversed, with twenty dollars costs and disbursements, and the proceedings dismissed.

FINCH, P. J., McAVOY, MARTIN and TOWNLEY, JJ., concur.

Orders reversed, with twenty dollars costs and disbursements, and proceedings dismissed.