### WARD v. STANARD et al.

(Supreme Court, Appellate Division, Second Department. April 24, 1903.)

1. WILLS—LAPSED LEGACY—EFFECT.

Testatrix bequeathed to her son one-half of her estate for the term of his natural life. "At his death I leave to his first daughter C. five thousand dollars, the balance of his portion of my estate at his own entire disposal." C. died before her father. Testatrix also left a daughter, and it was her intention to divide her estate equally between son and daughter. Held, that the legacy lapsing by C.'s death before her father fell back into the fund from which it was to be taken, and not into the residuum of the estate.

2. SAME—CONSTRUCTION—POWER OF DISPOSAL.

The will conferred on the son a power of disposal of his portion of the estate.

3. SAME—ESTATE CREATED IN DEVISEE.

The real property law (Rev. St. [9th Ed.] p. 3562, § 111) declares that a power "is an authority to do an act in relation to real property, or to the creation or revocation of an estate therein, or of a charge thereon." Section 114 defines a power as general where it authorizes the transfer of a fee by means of conveyance, will, or charge on the lands embraced in the power, to any grantee whatever. Section 129 provides that where an absolute power of disposition, not accompanied by any trust, is given to the owner of a life estate, such estate shall be changed into a fee absolute as to creditors, but subject to any future estate limited thereon in case the power is not executed. Section 131 declares that in all cases where power of disposition is given, and no remainder is limited on the estate of the grantee of the power, such grantee shall be entitled to an absolute fee. These provisions have been construed as applicable also to powers concerning personalty. Held, that under the will the son acquired the ownership of one-half of the personalty, untrammeled by a

trust or remainder, and could exercise the power of disposal by will, or could dispose of the property by will not in the exercise of a power.

4. SAME—EXERCISE OF POWER—WHAT LAW GOVERNS.

The real property law (Rev. St. [9th Ed.] p. 3567, § 147) provides that, where a power to dispose of real property is confined to a disposition by devise or will, the instrument must be a written will, executed as required by law. Code Civ. Proc. § 2694, declares that, except where special provision is otherwise made, the validity and effect of a testamentary disposition of any property, other than real estate, situated within the state, is regulated by the laws of the- state or country of which the decedent was a resident at the time of his death. Testatrix bequeathed property to her son for life. At his death his whole portion of her estate was to be "at his own entire disposal." *Held*, that the son could make "entire disposal" of his portion of the personalty by an instrument legal in the place of his domicile, and it did not have to conform to the law of testatrix's domicile.

5. SAME--DEFECTIVE EXECUTION OF POWER—REMEDY IN EQUITY.

Where a husband has an estate for life in property, with power to dispose of it by will, and the will executed by him, by which he gives the property to his wife, is not effective as an execution of the power, because not executed in the presence of witnesses, as required by the laws of New York, equity ought to intervene with its remedial powers to carry out the husband's purpose.

Submission of controversy between Sylvester L. H. Ward, as substituted trustee under the last will and testament of Caroline M. Stanard, deceased, plaintiff, and Susan L. Stanard, individually and as administratrix with the will annexed of John B. Stanard, deceased, and others, defendants. Judgment that Susan L. Stanard is entitled to one-half of the trust fund mentioned in the submission. No costs.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Benjamin Trapnell, for defendant Susan L. Stanard.
Charles E. Hill, for the other defendants.

GOODRICH, P. J. The plaintiff is a substituted trustee under the will of Caroline M. Stanard, deceased, and the defendants constitute all the persons who claim to be interested in her estate. The parties have submitted to this court the determination of a controversy as to the construction of a part of the second paragraph of the will of Mrs. Stanard, dated in 1856, which reads as follows:

"To my beloved son John Beverly Stanard I give and bequeath one-third of my estate, real and personal, bonds, stocks and funds invested, for his use, benefit and profit, for the term of his natural life, at his death I leave to his first daughter Caroline Chew Stanard five thousand dollars, the balance of his portion of my estate at his own entire disposal."

Mrs. Stanard died in 1865, and her will, which says that it "is written with my own feeble hand," was probated in the office of the surrogate of the county of New York. It divided her whole estate into three equal portions among her three children, Ann E. Grinnell, John B. Stanard, and Maria L. Swords. Ann died without issue in 1858, and the testatrix in the same year added a codicil to the will, dividing her portion of the estate between John and Maria. Maria died, leaving children, in 1898, after John, who died in January of the

same year. He resided in Virginia, never in this state, and left a will wholly written and signed by himself, without witnesses. It reads as follows:

"I John B. Stanard of the town of Berryville and state of Virginia do make this will and testament, and in the exercise of the power of appointment conferred upon me by the last will and testament of my late mother, Mrs. Caroline M. Stanard, over that portion of her estate devised and bequeathed to me for my natural life, I hereby appoint and give to my wife, for her own absolute use after my death, the whole of the property, both real and personal, given to me by the will of my mother for the term of my natural life, with power of appointment as aforesaid.

"Witness my hand and seal this 20th day of November, 1897.

    "[Signed]           .          John B. Stanard.  [Seal.]"

This will was admitted to probate in Virginia in March, 1898, under the statute of that state which provides that:

"No will shall be valid unless it be in writing and signed by the testator, or some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover unless it be wholly written by the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses present at the same time; and such witnesses shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary."

The estate of Caroline consisted wholly of personal property, which has always been within this state, and is now in the custody of the plaintiff, who, after he became trustee, paid one-half of the income to John during the remainder of his lifetime. John died without issue, leaving his widow, Susan L. Stanard, to·whom letters of administration were issued by the county court of Clarke county, Va., in April, 1898. She claims that her husband's will "is a valid appointment, bequest, and disposition to her of the whole of that portion of the estate of the said Caroline M. Stanard which was devised and bequeathed by her will to the said John B. Stanard, and of which the income was paid to him in his lifetime as aforesaid; and she thereupon claims one-half of the trust funds now in the hands of the said trustee."

The other parties defendant are the executor, legatees, heirs at law, and next of kin of Maria, and they claim the whole corpus of the trust fund in the hands of the trustee, upon the grounds that the testatrix intended to give John merely a life estate in one-half of her estate, with a power of appointment at his death; that the intended life estate was not changed into a fee by the Revised Statutes; that his attempted execution of the power was defective; that equity will not aid this defective execution of the power; and that his one-half portion reverted on his death to the next of kin of the testatrix. We are called upon to decide between these conflicting claims.

Mrs. Stanard, the widow of John, contends that the expectant legacy of $5,000 given to Caroline Chew Stanard, daughter of John, lapsed by the death of the legatee during the life of her father, but did not become a part of the residuum of the estate; that it fell back into the fund, out of which it was to be taken only in case Caroline survived her father, and is to be dealt with as if it had never been

otherwise disposed of than in the legacy to John. The other defendants claim that the legacy lapsed by the death of Caroline Chew Stanard during the lifetime of her father, and contend that as the will contains no residuary clause, and makes no provision for the devolution of the legacy in case of its lapse, the testatrix, as to this amount, died intestate, and the amount is to be divided equally between John and Maria; and they concede that Susan, under the will of her husband, became entitled to his moiety of the $5,000.

Let us start with the principle that the law favors a construction of a will that will prevent partial intestacy. Vernon v. Vernon, 53 N. Y. 351; Stokes v. Weston, 142 N. Y. 433, 37 N. E. 515. English v. Cooper, 183 Ill. 203, 55 N. E. 687, cites with approval the strong language in 2 Redfield on Wills, 235:

"The idea of any one deliberately purposing to die testate as to a portion of his estate, and intestate as to another portion, is so unusual in the history of testamentary disposition as to justify almost any construction to escape from it."

The principle was also approved in Woman's Union Missionary Society v. Mead, 131 Ill. 33, 23 N. E. 603.

There can be testacy of the $5,000 only by holding that the legacy fell back into the portion out of which it would have been taken if Caroline Chew Stanard had survived her father.

It is not at all doubtful that the testatrix intended to divide her estate equally between John and Maria, and it is her intention for which we are searching. If we hold that the lapsed legacy fell back into John's portion at Caroline's death, the equality intended by the testatrix will be exactly preserved. The law favors equality among children in the distribution of estates. Stokes v. Weston, supra.

There is a manifest and logical distinction between a legacy charged on a devise and a legacy excepted from a devise, and the reason is apparent. When a legacy is charged upon land, and the legacy lapses, the legacy sinks into the devise, and the devisee takes the land free from any charge thereon, for the gift to him in the first instance was of the whole; and being thereafter modified or changed, and the modification failing, the gift remains complete as at first. But where a legacy is excepted from the devise a lapse of the legacy does not inure to the benefit of the devisee, for the reason that he never had a complete gift of the whole interest. 18 Am. & Eng. Ency. (2d Ed.) 766, 767, where cases are cited in support of the two principles. The same rule is applicable to personal estate. The question, therefore, is whether the testatrix intended to make the $5,000 legacy to Caroline Chew Stanard a charge upon John's share, or whether she intended to except it from such share. I can find in the will and codicil no intention to except Caroline's legacy from John's equal share of the estate, save in case of her survival. Certainly his interest was not to be diminished during his lifetime, for the legacy was contingent upon Caroline's survival. A similar provision occurs as to the share devised to Maria. The legacy to John was of one-half of the estate for his use during his natural life, and in this use there was to be no diminution by Caroline's legacy, as that was to take effect only at his death. The legacy to her was

not to become an exception out of his share unless she survived him. We are clearly of opinion that the lapsed legacy fell back into the fund from which it was to be taken, and not into the residuum of the estate.

The next question is whether John had the power of disposal of the remainder after his life estate of the one-half of the estate, either by will or otherwise. In considering this question, it is well to refer to established rules. The real property law (Rev. St. [9th Ed.] p. 3577, § 205) provides:

"Every instrument creating, transferring, assigning or surrendering an estate or interest in real property must be construed according to the intent of the parties, so far as such intent can be gathered from the whole instrument, and is consistent with the rules of law."

See, also, Heath v. Hewitt, 127 N. Y. 166, 27 N. E. 959, 13 L. R. A. 46, 24 Am. St. Rep. 438, where it is said that the doctrine applies indifferently to wills or grants, and that "the surrounding circumstances existing when the contract was entered into, the situation of the parties, and the subject-matter of the instrument," may be considered in reaching the intent.

It will be noted that the paragraph of the will containing the bequest to John is identical in its language with the paragraph which relates to the share of Maria. This also demonstrates the intention of the testatrix to treat John and Maria equally. This intention is further confirmed by the codicil, and will and codicil are to be construed together. Ward v. Ward, 105 N. Y. 68, 11 N. E. 373. The absence of a residuary clause also reflects light upon her intention. It shows that she believed that she had already disposed of her entire estate, so that there was no necessity for a residuary clause; and it may also be noted that, if the contentions of the heirs of Maria should be sustained, the testatrix died intestate as to one-half of her estate—a result which, as already shown, is to be avoided whenever possible.

Riker v. Cornwell, 113 N. Y. 115, 20 N. E. 602, where there was a residuary bequest, held (page 127, 113 N. Y., and page 606, 20 N. E.) that the doctrine is firmly established that "where the residuary bequest is not circumscribed by clear expressions in the instrument, and the title of the residuary legatee is not narrowed by special words of unmistakable import, he will take whatever may fall into the residue—whether by lapse, invalid disposition, or other accident." But in the case at bar, as there was no residuary clause, we must take our choice between testacy and intestacy. Besides, there are words of unmistakable import in the will to indicate that one-half share of the estate was, as to its disposition, under his absolute control.

Each paragraph of the will relating to John and Maria gives to each, in the same language, an equal estate; that is, one-third for his (or her) use, benefit, and profit for the term of his (or her) natural life, "at his [or her] death," $5,000 to his (or her) child; "the balance of his [or her] portion of my estate at his [or her] own entire disposal." This can be construed as nothing more, nothing less, than a power of disposal by John. We must not fail to give effect to

the whole language of the paragraph. The first part, standing alone, would have erected a life estate, without the words "at his death * * * the balance of his portion of my estate at his own entire disposal." This latter clause did not relate to a life estate, but to the body of the estate. It not only conferred upon John power of disposal of his whole portion by a will which, of course, would take effect "at his death," and after his life estate had terminated, but it also conferred upon him the power of disposal during his lifetime by a suitable instrument of transfer. The testatrix said, in effect: "I give John the power to dispose of one-half of my estate as it shall exist at the time of his death. If at his death Caroline is living, she is to receive $5,000 out of his portion, and he may dispose of the balance. If she is then dead, there is to be no exception of the $5,000 from his portion. In any event, he shall have the 'entire disposal' of the balance of his portion of the estate."

The codicil divides the estate into equal portions between the then surviving children, Maria and John. It was the evident intention of the testatrix, according to will and codicil, that no distinction should be made between them. Caroline died during the lifetime of the testatrix, and we may assume that this fact was known to her, yet she made no change as to equality in her estate on account thereof. The will was left intact by the codicil, so far as it relates to equal division between Maria and John. The income of John's portion up to the time of his death was paid to him. It was never diminished by the legacy to Caroline, for she died before him. The will exhibits no intention of the testatrix to diminish John's share, except in the contingency that Caroline should survive him; and she did not survive him, so that his portion was not diminished by Caroline's survival. Her legacy lapsed and fell into his portion, and he became vested with power to dispose of his equal one-half portion of the estate.

This leads us to consider his exercise of his power, if it shall be concluded that he had power as defined in the Revised Statutes. "A power," by the real property law, "is an authority to do an act in relation to real property, or to the creation or revocation of an estate therein, or of a charge thereon." Rev. St. (9th Ed.) p. 3562, § 111. Section 114 defines a power as general where it authorizes the transfer of a fee by means of conveyance, will of, or charge on the lands embraced in the power, to any grantee whatever. Section 129 provides that where an absolute power of disposition, not accompanied by any trust, is given to the owner of a life estate, such estate shall be changed into a fee absolute as to creditors, but subject to any future estate limited thereon in case the power is not executed, while section 131 distinctly declares that in all cases where power of disposition is given, and no remainder is limited on the estate of the grantee of the power, such grantee shall be entitled to an absolute fee. See 1 Thomas's Law of Estates, p. 955, and cases cited. In Cutting v. Cutting, 86 N. Y. 522, and in Matter of Moehring, 154 N. Y. 423, 48 N. E. 818, it was held that the provisions of the article of the Revised Statutes, "Of Powers," include and are applicable as well to powers concerning personalty as to those affecting real es-

tate. In Hutton v. Benkard, 92 N. Y. 295, and Cook v. Lowry, 95 N. Y. 103, it was held that the provisions of the Revised Statutes relating to powers govern the creation, construction, and execution of powers, so far as they can be made applicable to personal as well as to real property, and that there should not be two rules—one applicable to personal property, and the other to real estate.

The will gives to John one-third of the estate for his use, benefit, and profit during his life. The third part of the estate is treated by the testatrix as, and is termed, his portion of the estate:

"At his death I leave to his daughter, Caroline Chew Stanard, five thousand dollars, the balance of his portion of my estate at his own entire disposal."

The words "balance of his portion" relate to the possible survival of Caroline, and the consequent diminution of John's share. We have held that in order to give effect to the intention of a testator, as it appears from the will as a whole, we may punctuate, add, omit, substitute, or transpose words. Hull v. Pearson, 36 App. Div. 232, 55 N. Y. Supp. 324. See, also, Mott v. Ackerman, 92 N. Y. 539, and Phillips v. Davies, 92 N. Y. 199. And so we may read the will as saying, "Whatever part of John's share of my estate remains, whether or not Caroline survives him, shall be at his entire disposal, not merely by will, but in any lawful manner."

The will took effect only at the death of the testatrix. When Caroline died, before the testatrix, the bequest to her lapsed and fell back into John's one-half portion, and we may construe the will as if no bequest to Caroline had been made. In that situation, the testatrix gave to John the "entire disposal" of the corpus of one-half of her estate. Indeed, the fair deduction from will and codicil, as interpreted by the authorities and the situation of the parties, is that the testatrix intended to, and did, actually give John the absolute ownership of the one-half of her estate, and that she believed that she had conferred upon him such ownership when she said that the balance of his portion of the estate was at his own entire disposal. One of the incidents of the situation must be regarded, and that is that the will was written by a woman, not by a lawyer. In Delph v. Delph, 65 Ky. 171, 173, where a will had been unskillfully written by the testator himself, it was held that "this fact must be considered in the judicial interpretation of his pervading intent."

Under the cited provisions of the Revised Statutes, and the authorities which make those provisions applicable, so far as may be done, to personal as well as to real estate, John, who had a life estate, with power of disposition of the remainder, acquired the ownership of one-half of the personalty, untrammeled by a trust or remainder. The combination of life estate and power of entire disposal perfected the ownership, and he could exercise the power of disposal by will, or he could dispose of it by will not in the exercise of a power.

But there remains the question whether John made a disposal of his share by the instrument which is conceded to be a valid will under the laws of Virginia, the state of his residence. The first inquiry is whether the language of Mrs. Stanard's will devolved upon John simply a power of appointment by will, or whether she intended that

he could dispose of his share by any legal instrument. As the will does not limit the mode of executing the power to appointment by will, John might have executed a conveyance of his portion—both life estate and remainder. He reserved his life estate for his own use, and disposed of the remainder by an instrument which is conceded to be a will valid by the law of his domicile. If the estate devised to John had been land in this state, and he had merely power of disposition by will, it is true that his will would have to be executed with the formalities required by our statute, for the reason that it would affect the title to real property within the state; but, as he became the owner of the property, he was authorized to make "entire disposal" of his portion of the personalty, and he could do so by an instrument legal in the place of his domicile. Real Property Law, § 147 (Rev. St. [9th Ed.] p. 3567), requires only that the instrument shall be "executed as required by law"; and, as John was owner of the personalty, the required law was that of his domicile, not the domicile of the testatrix. Section 2694, Code Civ. Proc.; Betts v. Betts, 4 Abb. N. C. 317.

Even if the will of John is not effective as a will in the execution of a power, because not executed in the presence of witnesses, according to the laws of this state, equity ought to intervene with its remedial powers to carry out John's purpose and intention to give his wife his portion of the estate. Judge Story, in his Equity Jurisprudence (13th Ed. §§ 169–174), expresses this proposition broadly and strongly in the case of a defective execution of a mere power in favor of a wife, and this where the defect arises either from an informal instrument, not within the scope of the power, or the improper execution of the appropriate instrument—all that is necessary being that the intention to execute the power should clearly appear in the writing; and he instances a will executed in the presence of two witnesses only, where the law required three. There is abundant authority for the principle that, where the testator's object is worthy, the court will find a way of upholding a will and effectuate it through some legal channel of construction, if any be open. 2 Jarman on Wills, 842; Greene v. Greene, 125 N. Y. 506, 512, 26 N. E. 739, 21 Am. St. Rep. 743; Terry v. Wiggins, 47 N. Y. 512.

Our conclusion is that the legacy to Caroline fell back at her death into the fund to which it was attached, and not into the residuum; that the will gave John the absolute ownership, or else the power to dispose of one-half of the estate; that by his will he executed the power, whether by appointment or by disposal, according to the law of his domicile; that, as a court of equity, we should give effect to the intention thereby indicated; and consequently that his widow is entitled to one-half of the estate.

Judgment, upon submitted controversy, that Susan L. Stanard is entitled to the one-half of the trust fund mentioned in the submission. No costs. All concur.