Joseph A. Cox, S.
This proceeding for the construction of the testator’s will is occasioned by the fact that the testator left an estate substantially larger than he contemplated. The question is whether his elaborately drawn will disposes of his estate.
*180 The will is divided into 29 articles which the testator refers to as paragraphs. The residuary estate is disposed of by paragraphs third to eighth inclusive. The portion designated third begins as follows: “ third : I direct my Executors, hereinafter named, to divide all the rest, residue and remainder of my property, real as well as personal, and wheresoever situate, into ten (10) equal shares or parts, and from and out of the first two (2) of said ten (10) equal shares or parts, I make the following bequests, giving unto each of the following named relatives and friends of my deceased wife and of mine, and the charities named, the sum set opposite their names, respectively: ”. (Emphasis supplied.)
The bequests 1 ‘ from and out of” such 2 of the 10 equal residuary shares are enumerated under 3 captions designated “sub-paragraph ‘A’”, “sub-paragraph ‘ B ’ ”, and “sub-paragraph ‘ C ’ ”. These bequests total $608,500. The testator must have recognized the improbability that two tenths of his residuary estate would amount to exactly $608,500 and it would seem that he was quite convinced that two tenths of his residuary estate ivould not equal the total of his bequests in paragraph third for he further provided:
“ If there shall not be sufficient funds in the two (2) shares herein set apart to pay in full the legacies contained in Sub-Paragraphs ‘A’, ‘ B ’ and ‘ C ’ of this paragraph ‘ third then I direct that said legacies be paid in the following order:
“ (1) The legacies contained in Sub-Paragraph ‘A’.
“ (2) The legacies contained in Sub-Paragraph * B ’.
“ (3) The legacies contained in Sub-Paragraph 1 C ’.
“Until the legacies contained in Sub-Paragraph ‘A’ shall be paid in full, nothing shall be paid on account of the legacies contained in Sub-Paragraph ‘ B ’, and until the legacies contained in Sub-Paragraph ‘ B ’ shall be paid in full, nothing shall be paid on account of the legacies contained in Sub-Paragraph ‘ C ’.
“ If it is necessary to abate the legacies made in any of these Sub-Paragraphs, then I direct that the legacies in each class abate proportionately. ’ ’
The fact is that the two-tenths residuary share directed to be set aside to provide these particular bequests exceeded the amount required for that purpose by more than one-half million dollars. The problem exists as to the disposition of this excess.
A like problem does not arise in respect of other residuary portions, which are bequeathed later in the will, since each of the later bequests is not defined by a dollar amount but consists *181 of a fractional share of the residuary estate. Despite the fact that, because of the size of the estate, these shares are larger than the testator anticipated, some of these legatees are claiming that the surplus existing in paragraph third spills over to augment their fractional shares. This contention is based primarily upon acceptance of the fact that a person who draws a will performs this act to avoid intestacy. But the position of these contenders is wholly dependent upon a finding that the dispositions under article third are not residuary gifts and the later clauses' of the will, standing apart, constitute the true residuary dispositions. Such a conclusion cannot be justified by the language and form of the will. The direction to divide the residuary property into 10 equal shares does not permit the identification of any one or more of such shares as a true residuary distinguishable from other residuary shares.
Legatees within the three general groups benefited by the subparagraphs or paragraph third assert that the surplus must be confined to them and be distributed to them. Certain of the legatees urge that the excess be prorated among all the paragraph third legatees while others of them would have the will construed to have the excess paid entirely to the legatees identified in subparagraph C. The latter persons can rely only upon the fact that they are the last named of all the legatees provided for by subparagraphs A, B and C but the text of the will makes it clear that this last position was not an especially beneficial one and these legatees were not special recipients of bounty. Instead, according to the testator’s directions, they were to benefit only in the event sufficient assets were available to meet the prior legacies in full. Certainly this inferior position is not indicative of a testamentary intention to give these legatees greater benefits than the preferred legatees.
Examining the paragraph third legatees as a group it becomes quite obvious that the testator’s purpose was to try to give each legatee a sum which was meaningful to the testator. The testator was a highly successful lawyer. Had his primary purpose been to bequeath particular sums of money to designated persons he could, and presumably would, have provided monetary bequests prior to the disposition of his residuary estate. This is the usual and simple method of creating general bequests, a method with which the testator certainly was familiar. But this method was not one which he wished to adopt because he desired to limit the total of all such bequests to two tenths of his residuary estate and he did not want such bequests to infringe upon the remaining eight tenths. In sub- *182 paragraph A the testator bequeathed $50,000 to Leo V. McLaughlin, $10,000 to William Jay Lippman, $10,000 to Stephen S. Bernstein, $10,000 to Frederick R. Bailen and $10,000 to Max Shuster. In subparagraph B the testator bequeathed an additional $50,000 to Leo V. McLaughlin, $15,000 each to William J. Lippman, Stephen S. Bernstein, Frederick R. Bailen and Max Shuster. In subordinating the bequests in subparagraphs B and C to the bequests in subparagraph A the testator not only was confining the total of his gifts in paragraph third of his will to two tenths of his estate but was directing that such legacies be paid “ from and out of ” such two tenths. Nowhere in paragraph third is there a direction for the distribution of the full two-tenths share whether in dollars, fractions or percentages. The conclusion must be that the testator regarded the legacies as fixed by him according to priorities to be adequate expressions of his testimony purpose. He could have bequeathed more or less by designating fractional shares, in which case the benefit to each legatee would depend upon the size of his estate. He chose to designate the amounts in dollars. The obvious query is why, since he recognized the possibility that his estate could prove inadequate to carry out his entire scheme, did he not also recognize the possibility that his estate could be enhanced. This question is one that the testator alone could answer. Perhaps he regarded the latter possibility as absurd or perhaps he neglected to analyze fully his own testamentary plan. Certainly there is an omission in the will. The maxim of construction is that intestacy is to be avoided and the intention of a testator, if ascertainable, is to be carried out to avoid such a result. More compelling is the judicial admonition that a court may not assume the position of a testator and rewrite a deficient will (Matter of Hoffman, 201 N. Y. 247, 256; Matter of Englis, 2 N Y 2d 395; Matter of Slater, 3 N Y 2d 109). That is the situation here. There is a lack of any direction in the will as to the disposition of this excess property and it is not the prerogative of the court to conjecture as to the testator’s unexpressed wishes.
The portion of the two-tenths residuary share not required for the payment of the bequests provided in paragraph third is payable to the distributees of the testator as a residue of a residue (Matter of Urchs, 15 N Y 2d 893, modfg. 20 A D 2d 291).