OPINION OF THE COURT
Edward M. Horey, S.
The proceeding before the court is for construction of certain bequests made in decedent’s will. The construction is sought by the administratrix c. t. a. The will was executed on February 26, 1957. The decedent died the 27th day of April, 1977. The will contained five dispositive paragraphs. Three of them are in issue. They raise novel questions in this proceeding.
From an affidavit of facts submitted without objection in support of the petition, it appears that the decedent was the second wife of Joseph Oliverio, Sr. There were two children of the first marriage of Joseph Oliverio, Sr. They were Joseph Oliverio, Jr., and Kathryn Oliverio. They were three years and one year of age respectively at the time of their father’s second marriage to the decedent. Although unrelated and *11 unadopted, they were, nevertheless, raised by the decedent as a surrogate mother. The decedent referred to them during her life and in her will as her children and to their children, as her grandchildren.
It is particularly significant that the will of the decedent contains no residuary clause. The two stepchildren of the decedent, Joseph and Kathryn, both survived her, but Joseph has subsequently died. Distributees that will take in the event of her intestacy are 19 in number. They are a surviving brother, John Chapman; six nieces and nephews who are the children of a deceased brother, Harry Chapman; six nieces and nephews who are the children of a deceased sister, Grace Scott; six nieces and nephews who are the children of a deceased sister, Dorothy Chapman Hadley.
Paragraph fourth of the decedent’s will bequeathed in part: "all monies that I have on deposit in the Salamanca Trust Company to my said daughter, Kathryn Mary Donahoo and to my son, Joseph Oliverio, in equal shares.” (Italics added.)
At the time of her death, decedent had the sum of $7,131.70 in a savings account in her name at the Salamanca Trust Company. In addition, she had the sum of $4,000 in a safe-deposit box in her name at that bank.
No question is raised concerning the savings account. Clearly, the moneys in that account passed in equal shares to the stephchildren as named legatees.
The $4,000 in the decedent’s safe-deposit box presents a different issue. For decision is the question of whether or not moneys in a decedent’s safe-deposit box in a specified bank are properly considered to be "on deposit” in that bank. If they are so considered they pass to the beneficiaries named in the will. Contrariwise, they do not.
The research made by counsel for the petitioner and this court’s research lead to the conclusion that the area for consideration is virgin territory. Suprisingly, no determination of the issue presented has been found in the decisional law of this State. Only two cases have been discovered in other jurisdictions which even approximate a determination of the issue.
Decisive of the issue is the meaning to be given to the phrase "on deposit”.
Recourse to etymology discloses that the word "deposit” had *12 its origin in the Latin noun deposition. Under Roman law, a deposition was a bailment of a specific item. Two features attended the bailment. The specific item was to be returned in kind and a depositary received no consideration beyond the possession of the bailed item. It was a gratuitous or naked bailment. "Properly and originally all deposits (were) of this description”. If consideration were paid for the bailment, under Roman law, the proper word was not a: depositum, but rather a locatio. "If the owner of the property pays for its custody or care, it is a 'locatio custodiae’. If on the other hand the bailee pays for the use of it, it is a 'locatio rei’ ”. (See historical treatment of meaning of "deposit” by Supreme Court of Iowa in Officer v Officer, 120 Iowa 389.)
In an early decision, our Court of Appeals also traced the history and meaning to be accorded "a deposit”. In Curtis v Leavitt (15 NY 9), a decision 297 pages in length, the Court of Appeals (pp 166-167) said: "But what are deposits, and what, in commercial law, are the obligations which are, or may be, assumed by the parties to that species of contract? Originally, a deposit of money was made by placing a sum of money in gold or silver with a bank or other depositary, to be returned, when called for, in the same indentical (sic) coin, and without interest, the depositor paying the depositary a compensation for his care. But, for more than a century prior to the passage of the act in question, the term 'deposit’ had come to mean quite a different transaction, as to the rights and liabilities of the parties to it. It became customary to deposit money for a particular period, and on interest, or payable at certain prescribed periods after notice. In short, the term deposit became a symbolical word to designate not only a deposit, in its original sense, but all that class of contracts where money in any of its forms, as specie or bank bills, was placed in the hands of banks or bankers, to be returned in other money, on call or at a specified period, and with or without interest.” (Italics added.)
The first definition of a "deposit” found in Black’s Law Dictionary [4th ed], is the following: "A naked bailment of goods to be kept for the depositor without reward, and to be returned when he shall require it.” There follow additional definitions which would include money placed in a bank in the typically current savings or checking account.
It is this court’s view that the original meaning of a "deposit” embraces the present transaction attending the use of a *13 safe-deposit box in a bank. Money or valuables are deposited in kind for safekeeping with the bank as the depositary. The obligation of the depositary is to insure the return of those items in kind when requested or required by the depositor. Typically, only a minimal rental is charged.
The fact that the original meaning of "deposit” has expanded over the years to include an additional meaning of placing moneys in a bank to be returned, not in kind, but in other money and with or without interest, does not militate against the original meaning or in any way vitiate it. The meaning of "deposit” has merely been expanded and extended. The court believes it currently includes "not only a deposit in its original sense”, which was a bailment of money or property to be returned in kind, "but also that class of contracts” between a bank and a depositor which create the debtor and creditor relationship that attends the current checking and savings accounts. (See Curtis v Leavitt, 15 NY 9, 167, supra.) Thus, by definition, the moneys in the safe-deposit box are properly construed to be "on deposit”.
Further, a reading of the will discloses that decedent’s testamentary scheme and "dominant purpose was to benefit her two stepchildren, Joseph and Kathryn. To delimit the meaning of the phrase "on deposit at the Salamanca Trust Company” to exclude the moneys in the safe-deposit box there would violate the established rule that a will should be construed to benefit those persons who, by the terms of the will, are shown to be the foremost objects of her bounty. (Matter of Fabbri, 2 NY2d 236, 240, 242; Matter of Dammann, 12 NY2d 500, 505.)
Finally, there is a general maxim of construction that the law favors testacy over intestacy. (Haugh v Schumacher, 166 NY 506, 515; see Carmody-Wait 2d, NY Prac, § 162:27, and cases cited.)
In the instant case, it appears that the decedent included in her several bequests and devises all property which she owned at the time of executing her will with the possible exception of the money in the safe-deposit box. Since the amount of that money would have represented a substantial portion of the decedent’s worldly goods when her will was executed, it is reasonable to assume she had its disposition present in her mind. This view is fortified by the absence of any residuary clause to otherwise dispose of such money. "Indeed it has been that the absence of a residuary clause strengthens the *14 presumption that the decedent intended by other provisions of his will to dispose of his entire property.” (7 Warren’s Heaton, Surrogate’s Cts, § 23, par 3, cl [a].)
Consistent with the rule that intention is to be ascertained by what was apparently or presumably in the mind of a testator at the time of making the will (Matter of Hoffman, 201 NY 247, 255), the court finds it reasonable to presume that the decedent intended to make an effective and valid will disposing of all property which she then owned, specifically including the money in the safe-deposit box.
The court is of the opinion that the two cases reported in foreign jurisdictions are properly distinguished from the instant one.
In Matter of Schmidt (38 NJ Super 524, 525) the New Jersey appellate court determined that money found in a safe-deposit box was not included in a bequest of " 'any cash in any bank account or bank accounts’ ”. This court is of the opinion that a bequest of cash "in any bank account” is markedly different than one of cash "on deposit” in a specified bank. The former is broad contextually as to the location of a bank; any bank would suffice. Yet, it is narrowly restrictive as to the location at a bank; only the presence of money in an account would suffice. In contrast, the latter phrase specifies a particular bank, but then provides generally, that the money need only to be found there "on deposit”.
The Illinois case of Lavin v Banks (406 Ill 605) is factually closer to the one in issue. There, the bequest was of "all monies on deposit in my name in any bank or banking institution”. The Supreme Court of Illinois reversed an appellate court determination and held that money in a safe-deposit box of a decedent would not pass under the language of the bequest. In reversing, the Supreme Court of Illinois placed significance on the fact that the decedent’s safe-deposit box was owned by and located in a safe-deposit company, a corporation separate and distinct from any banking corporation. Also present in the case was the fact that the testator had disinherited one of four sons. To interpret the bequest to include the moneys found in the safe-deposit box would have resulted, under the facts, to the disinherited son sharing in the moneys, a consequence which the testator clearly intended not to happen.
Further, note is made that under both the New Jersey case, Matter of Schmidt (supra), and in the Illinois case, Lavin v *15 Banks (supra), the testator had included a residuary clause. Thus, in contrast to the case at bar, intestacy was not an issue. The cases are informative, but objectively this court finds nothing in either that is persuasive precedent for the issue presented in the will for construction.
For all of the reasons noted, the court holds that the $4,000 found in the decedent’s safe-deposit box was "on deposit” and, accordingly, holds that it passes to decedent’s stepchildren, Kathryn and Joseph, the legatees named in paragraph fourth of her will.
Under paragraph third of her will, the testatrix made the following devise: "I give and devise my one-third (Vs) interest in my real property located at 631 Front Avenue, Salamanca, New York in equal shares to my daughter, Kathryn Ann Donahoo of Aiken, South Carolina and my son Joseph G. Oliverio of Salamanca, New York.”
At the time of the execution of her will (Feb. 26, 1957), the decedent owned an undivided one-third interest in the premises and a life interest in the remaining two-thirds interest of the premises. Ownership of the remaining two-thirds interest was in decedent’s stepdaughter, Kathryn, and her stepson, Joseph, each owning, an undivided one-third interest, subject, in each instance, to a life interest of the decedent.
At the time of her death, decedent was the sole owner of the premises known as 631 Front Avenue. The additional acquisition of interest on the part of the decedent resulted from a conveyance made by her stepchildren, Kathryn and Joseph, of their respective one-third interests. These conveyances were by a deed dated July 22, 1975, made 18 years after the execution of the decedent’s will.
A question states the issue: Did decedent’s interest in the real property at the time of her death (viz: entire fee ownership) pass to her stephchildren as devisees named in paragraph third, or did only her interest at the time of the execution of the will (viz: an undivided one-third interest) pass to them with the remaining interest passing in intestacy?
Under common law, a decedent could devise only such real property as he or she owned at the time of execution of the will. This rule of law was changed by section 14 of the former Decedent Estate Law. That change has been carried forward into the current EPTL. It is now provided that unless the will of a decedent provides otherwise, a devise of all property will pass all property owned by the decedent at the time of his *16 death. (See EPTL 3-3.1; Carmody-Wait 2d, NY Prac, § 169:67, and cases cited.)
The current status of the law is that a disposition of real property, which is all inclusive in its terms, will carry all real property acquired after the making of the will. However, in the absence of a devise in unlimited terms as the statute requires there must be language in the will which will enable the court to see that the testatrix intended it to operate upon property acquired thereafter. "A devise of real estate, universal in its terms, would carry after-acquired land without language pointing to the period of testator’s death, but in the absence of unlimited terms in the will there must be language which will enable the court to see that the testator intended it to operate upon real estate which he should afterward purchase. (Lynes v Townsend, 33 NY 558.) That is the canon of construction we shall apply.” (Italics added.) (Per Pound, J., in Harper v Harper, 219 NY 295, 304; to same effect, see Carmody-Wait 2d, NY Prac, § 169:67, citing Matter of Schult, 49 NYS2d 573, affd without opn 269 AD 771.)
Two principles of construction are also noted. First, is the principle that a testator’s intention "is to be ascertained not by what occurred long after the execution of his will, but by what was, apparently, or presumably, in his contemplation, at the time he was making it”. (Matter of Hoffman, 201 NY 247, 255, supra, cited with approval in Matter of Fitzgerald, 29 AD2d 325, 329.)
Secondly, note is made of the nature of the devise here in issue. As a devise of "my one-third (Vá) interest in my real property, located at 631 Front Street, Salamanca, New York”, it is clearly a devise, specific, and not general, in nature. It does not purport to dispose of "all” real property the decedent owned. Only the one-third interest owned at the time of execution of the will was specified for devise at her death. ‘
While no case has been found expressly ruling on the point, the court is of the opinion that a specific devise of realty is subject to the same rule that pertains to a specific bequest of personalty, viz: "As to specific legacies, the rule is well established that a will speaks as of the time of its execution”. (Matter of Delaney, 133 App Div 409, 413, affd 196 NY 530; to same effect Matter of Brann, 219 NY 263, 267; see, also, Wetmore v Parker, 25 NY 450, 464, stating the rule to apply to specific "gifts”.)
As the court views the matter, the decedent made a careful *17 inventory of her assets at the time she drew her will. In particular, she knew and specified her interest in the subject real property. When she devised that interest by paragraph third of her will she did it in terms which were unequivocal and specific. The court deems it important that all of the interest which she owned in the realty at the time of execution of her will she conveyed. There simply is no language in paragraph third or in any other corner of the will that indicates an intention that'the devise under paragraph third would operate on after-acquired property.
It is also particularly important to note that at the time she drew her will, this decedent had been the grantee of one deed from her stepchildren. They had earlier and gratuitously conveyed to her a life estate in their two-thirds interest in the real property. Secure with life possession and part ownership, the court does not believe that the decedent ever envisioned a further acquisition of interests in the property from her stepchildren. The court is of the opinion that it is more reasonable to believe that the decedent had concluded that she had acquired from her stepchildren, by the conveyance of the life interest to her, all interests that they ever intended to convey.
True, it is as the administratrix urges, the law favors testacy over intestacy. As the court has previously indicated and found, in a proper case a presumption against intestacy is to be applied. This is particularly true in those instances where a legatee or a devisee is to get something or nothing. In such instance, the presumption is that a testator intended a legatee or devisee to receive something in any event. (Matter of Strasenburgh, 136 Misc 91, 93, affd without opn 228 App Div 880, affd 255 NY 549.) Here, however, the named beneficiaries will inherit. They will receive precisely what the decedent had to and did devise, viz: an undivided one-third interest in the real property.
The application of the presumption against intestacy is one of degree. The presumption against intestacy may not be used to supply an omission. (Matter of Kerb, 130 NYS2d 259.) The proper application of the presumption against intestacy is reviewed in Carmody-Wait 2d, New York Practice (vol 27, § 162:27). There, it is said "It has been held that the court will not go to desperate lengths to avoid intestacy” (citing Matter of Butler, 9 Misc 2d 892). "To avoid intestacy the court cannot create a disposition not expressed or readily to be implied” *18 (citing Matter of Williams, 31 Misc 2d 844). The court cannot and will not rewrite or add to a will in order to avoid intestacy” (citing Matter of Bruce, 38 Misc 2d 1035; Matter of Stern, 48 Misc 2d 178).
The facts as to the real estate do not present a case where the presumption against intestacy is available. The decedent did not envision the subsequent acquisition of other interest in the real property, or certainly she would have made provisions for such contingency, either by devising "all” of her real property, or by providing for its disposition under a residuary clause. As to the interest in the realty later acquired, the court finds it to be simply a case of a contingency which was not provided for. The happening of the contingency, coupled with the absence of a residuary clause, has left a portion of the residuary estate undisposed of. This may be unfortunate, but as the Court of Appeals observed in Matter of Vosseler (220 NY 225, 228): "The fact that an event happened, prior or subsequent to the making of the will, which, as the will may indicate or disclose, was unknown or unforeseen and unprovided against by the testatrix, cannot affect the meaning of the language used. When the purpose of a testator is reasonably clear by reading his words in their natural and common sense, the courts have not the right to annul or pervert that purpose upon the ground that a consequence of it might not have been thought of or intended by him.”
The court holds that an undivided two-thirds interest of the decedent in the realty known as 631 Front Street, Salamanca, New York, passes to the decedent’s distributees as intestate property.
Paragraph sixth of decedent’s will raises the final question of construcion. It provided, in relevant part, a bequest of "my twelve shares of Salamanca First National Bank stock * * * to my said grandson, Michael Joseph Oliverio”.
The evidence submitted to the court discloses that at the time the decedent executed her will (1957) she owned 12 shares of Salamanca First National Bank stock. By virtue of stock splits, exercise of acquisition rights for additional stock, corporate merger of the Salamanca First National Bank with First Trust Union Bank and the subsequent merger of the First Trust Union Bank with Security New York State Corporation, the original 12 shares of stock underwent a series of *19 corporate metamorphoses to the end that they were transformed into 10 shares of common stock and 13 shares of preferred stock of Security New York State Corporation at the time of decedent’s death.
The basic question presented under this paragraph of decedent’s will is one of ademption. Are the original securities to be treated as extinct and the bequest adeemed; or are the successor securities to be treated as a substitution in the bequest?
At one time resolution of problems of ademption was properly resolved by determining the subjective intention of the testator. As a general rule this is no longer true. In Matter of Wright (7 NY2d 365, 368) the Court of Appeals stated: "What courts look to now is the fact of change. That ascertained, they do not trouble themselves about the reason for change.” (To same effect Matter of Brann, 219 NY 263, 268, supra; see, also, Matter of Ireland, 257 NY 155; Matter of Block, 91 Misc 2d 92, 94.)
Although rigid in format, the announced rule is subject to one exception. Changes "in name or form only” do not result in an ademption, said Judge Cardozo in Matter of Brann (219 NY 263, 267, supra). Formal, or insubstantial changes have no effect on a legacy or a devise. (7B Warren’s Heaton, Surrogate’s Cts, § 90, par 6; 9 Rohan NY Civ Prac, § 3-4.5 [1].)
By dint of judicial determination, the substitution of securities as a consequence of a stock split, corporate merger or reorganization have consistently been viewed as falling within the parameters of the very narrow, but, nonetheless, permitted exception. They are viewed generally to represent insubstantial change. In such instances, no ademption occurs. (Matter of Martin, 252 NY 582; Matter of Howe, 15 AD2d 396, affd 12 NY2d 870; Matter of McCarthy, 49 AD2d 204, 206-207; see, also, Matter of Startup, 207 Misc 310; Matter of Bradley, 119 Misc 2; Sears v Sears, 96 Misc 200; for textual review see 9 Rohan, NY Civ Prac, § 3-4.5 [1]; and for conversion of partnership interest to corporate stock Matter of Block, 91 Misc 2d 92.)
The court holds the 23 shares of stock owned by the decedent at the time of her death passes under paragraph sixth to the name legatee Michael Joseph Oliverio.