OPINION OF THE COURT
Michael H. Feinberg, S.
This is a miscellaneous proceeding pursuant to SCPA 1420 for a construction of the decedent’s will.
background
Carole Crater (the decedent) died on July 25, 1995, at age 50. Her will dated March 18, 1972 was admitted to probate by the court on October 15, 1997, and letters testamentary issued to the nominated successor executrix thereunder, Paulette Cheuvront (the petitioner). The petitioner subsequently brought this proceeding for the construction of paragraphs third and fourth of the will.
Paragraph third states in full as follows: “third I hereby give, devise and bequeath my entire estate, whether it be real property or personal property, or mixed, over which I may die seized or possessed or over which I may have the power of testamentary disposition unto my beloved mother, bradamante f. crater, absolutely and forever.”
Paragraph fourth states in pertinent part as follows:
“fourth In the event that my mother, bradamante f. crater, should predecease me or we shall die in a common disaster, then and in that event, I hereby give, devise and bequeath my estate as follows:
“A. Any moneys that I may have deposited in a savings account, I give, devise and bequeath to the Natural Wildlife Federation and the National A.S.P.C.A., to be divided equally between both organizations.”* (Emphasis added.)
The remaining sections of paragraph fourth ([B]-[K]) merely bequeath certain items of personal property to specifically named legatees and are, therefore, self-explanatory.
Since the decedent’s mother, the sole residuary beneficiary under paragraph third of the will, predeceased the decedent, *475 paragraph fourth becomes operative. This creates the problematic situation of a will without a residuary clause. In this particular instance, the problem arises because at the time of death the decedent’s probate estate consisted of a vacant parcel of real estate in Florida and monies deposited in various bank accounts denominated as savings (supersavings), checking, money market, and IRA (certificate of deposit) accounts, and in United States savings bonds.
The issue thus becomes whether the real estate and all of the aforementioned accounts may be included under the term “savings account” as used in paragraph fourth (A): “Any moneys that I may have deposited in a savings account, I give, devise and bequeath to * * * to be divided equally between both organizations.” For the reasons discussed infra, the court concludes that the decedent intended the term “savings account” to encompass all of her investments and bank accounts, however characterized; therefore, the monies therein shall be distributed equally to the two charities. The court further finds that the real estate cannot be embraced within the term “savings account” and thus passes by intestacy to the decedent’s distributees (12 maternal and 4 paternal first cousins).
THE LAW AND ANALYSIS
The primary purpose in a will construction proceeding is to ascertain and give effect to the testator’s intent (see, e.g., Matter of Carmer, 71 NY2d 781, 785; Matter of Thall, 18 NY2d 186, 192-193; Matter of Fabbri, 2 NY2d 236, 239-240). In determining that intent, the court must liberally construe the will, relying not on a single word or phrase but on a sympathetic reading of all its provisions and the surrounding circumstances in order to give effect to the testator’s intentions, either as clearly stated or implied (see, e.g., Matter of Rossi, 166 Misc 2d 507, 510; Matter of McNaught, 33 Misc 2d 158, 161).
These general rules of construction support the court’s conclusion that all of the decedent’s bank accounts and investments fall under the term “savings account” employed in paragraph fourth (A). The decedent’s state of mind at the time of making her will (her intention) can be ascertained from the preceding paragraph, third, which makes clear that she intended to dispose of her entire estate to her mother. The preamble to paragraph fourth addresses the contingency of the decedent’s mother predeceasing her (she did), in which case the decedent “give[s], devise [s] and bequeath[s] my estate as *476 follows”. “My estate” as used in the paragraph immediately following the attempted distribution of the decedent’s “entire estate” indicates an inclusive frame of mind. The logical conclusion thereof is that the decedent intended all of the monies in her bank accounts and their variations to be included under and distributed in the same manner as the money in her “savings account.”
The general maxim of construction known as the presumption against intestacy also supports the foregoing construction of the will. It provides that an interpretation resulting in intestacy as to any part of the estate is to be avoided (see, Matter of Warren, 11 NY2d 463, 468; Matter of Hayes, 263 NY 219, 225; Meeks v Meeks, 161 NY 66, 70; Ward v Stanard, 82 App Div 386, 389). Particularly in cases where, as here, there is no residuary clause, the presumption that a testatrix who took the trouble of making a will did not intend to dispose of only a small part of her estate and to die intestate as to a major part thereof, is strengthened (see, e.g., West v West, 215 App Div 285, 288; Ward v Stanard, supra, at 391; Kelley v Hogan, 71 App Div 343, 351; Matter of Oliverio, 99 Misc 2d 9, 13-14; Matter of McKendrie, 150 Misc 665, 666).
An expansive reading of the term “savings account” in the present will is further supported by analogous cases where the courts defined such words and phrases as “money”, “cash” and “on deposit” broadly in order to give effect to the testator’s intent and/or to avoid intestacy. In Smith v Burch (92 NY 227, 231, 234), for example, the Court of Appeals said that the meaning of the words “money” and “ready money”, when used in a will, depended upon the context and could even be held to include any kind of personal property, if such interpretation gave effect to the testator’s intent. “The word ‘money’ has sometimes been held to include securities, stocks, personal property, money in bank and money in the hands of agents, when the context and all the circumstances which were rightfully considered indicated such to be the intention of the testator.” (Supra, at 231.)
In Matter of Oliverio (supra, at 11), the decedent’s will bequeathed in part as follows: “ ‘all monies that I have on deposit in [the bank] to my said daughter * * * and to my son * * * in equal shares.’ ” At the time of death, the decedent had $7,131.70 in a savings account and $4,000 in a safe-deposit box at the bank. A question was raised as to whether the monies in the safe-deposit box were “on deposit” in the bank and thus embraced within the aforementioned bequest to the decedent’s *477 children. The court concluded that because the decedent included in her devises and bequests all the property she owned at the time, with the possible exception of the money in the safe-deposit box (which constituted a substantial portion of her worldly goods), it was reasonable to assume its disposition was also present in her mind at the time she executed the will. The court further stated that the absence of a residuary clause in the will fortified its position. “ ‘Indeed it has been said that the absence of a residuary clause strengthens the presumption that the decedent intended by other provisions of [her] will to dispose of [her] entire property.’ ” (Matter of Oliverio, supra, at 13-14.)
Likewise, in Matter of McKendrie (supra), the court interpreted the phrase “cash money” broadly in order to avoid intestacy as to the major portion of the estate. At the time of death in McKendrie, the decedent’s estate, other than personal effects, consisted of money she had deposited in the bank and invested in a savings and loan association, and only a few dollars in cash. These were substantially the same assets the decedent held when she executed her will wherein she devised and bequeathed one half of her “cash money” to a Mend and the other half equally to a niece and a nephew. The court concluded that in the absence of a residuary clause in the will, limiting or restricting the meaning of the phrase “cash money” would do violence to the decedent’s evident intent to dispose of her entire estate. “And the presumption against intestacy is very strong and is applied in all cases.” (Matter of McKendrie, supra, at 666; see also, e.g., West v West, supra; Matter of Goldmark, 186 App Div 447.) (The McKendrie court surveyed the law of various State and Federal courts and showed that liberal interpretations had often been given to “money” and “cash” to avoid intestacy.)
Even in a case where the will contained a residuary clause (¶ fourth), the court interpreted the phrase “ ‘all of my cash on hand at the time of my decease’ ” broadly so as to avoid cutting off the decedent’s granddaughter with a mere pittance of 66 cents (see, Matter of Feist, 170 Misc 497, 498). To achieve this result, the court determined that not only the $2 in currency found in the decedent’s home, but also the $9,455.90 deposited in two savings accounts, came within the phrase and would be divided equally among the decedent’s son, daughter and granddaughter pursuant to paragraph second of the will.
In another case where the will contained a residuary clause, the Court reached a contrary result and held that the phrase *478 “ ‘all the monies of which I may die possessed’ ” should not be extended to include the decedent’s stocks and bonds (see, Matter of Hinds, 270 App Div 408, 409). Had the Hinds Court determined otherwise, it would have practically cut off one of the residuary legatees. The Court stated that such a construction of a will is not to be made (Matter of Hinds, at 410). The Court also said that “[t]he fact that a will contains an independent residuary gift negatives an intention to use the word ‘money’ as meaning property” (supra). Under the circumstances, a liberal construction of “monies” was unnecessary in Hinds, but that does not obviate the need for broad interpretations where intestacy is to be avoided, as amply demonstrated supra.
In contrast to the liberal construction of “savings account” to encompass all of the decedent’s monetary accounts, the court finds scant precedent to include the realty therein. The case law has stated, for example, that “[t]he presumption against intestacy may not be used to supply an omission” (Matter of Oliverio, supra, at 17, citing In re Kerb, 130 NYS2d 259). Moreover, the court “will not go to desperate lengths” to avoid intestacy (Matter of Butler, 9 Misc 2d 892, 897). To avoid intestacy, “[t]he court cannot create a testamentary disposition which is not expressed or readily to be implied” (Matter of Williams, 31 Misc 2d 844, 845), such as is the case here.
The majority view holds that monetary terms in a will do not include real property. Although the cases concede that “money” might be used to cover some specific real estate, that can only occur where the testator’s intent to do so is made eminently clear. “But certainly no such violent extension of the word beyond its normal and proper meaning [‘money’ to include real estate] can ever be justified unless the intention to so use it is clearly manifest on the face of the will and put beyond all reasonable doubt” (Sweet v Burnett, 136 NY 204, 208; In re Kuneth, 107 NYS2d 613, 614 [Sur Ct, Queens County]; In re Kipp, 37 NYS2d 541, 544, 545 [Sur Ct, Saratoga County]; but compare, West v West, 215 App Div 285, supra [no residuary clause, so term “personal property” in will encompassed real property in order to avoid intestacy]). Bearing this in mind, the court finds that it is too much of a stretch under the language of the present will to include the decedent’s vacant land in Florida (real property) under the term “savings account” (personal property).
*479 CONCLUSION
For all the reasons discussed herein, the court construes paragraph fourth (A) of the decedent’s will to pass all of the monies in her various monetary accounts (all personal property) held at death equally to the two charitable organizations named therein. The court further determines that the Florida real estate shall pass by intestacy to the decedent’s distributees.

 Appearances were made for the charitable organizations named in paragraph fourth (A) of the will by the New York State Attorney General’s Office for the National Wildlife Society (Natural Wildlife Federation) and by counsel in the New York (national) office of the American Society for the Prevention of Cruelty to Animals (ASPCA).